# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 21-3024-01-CR-S-BP |
| COLBY FRONTERHOUSE, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, Acting United States Attorney, and Stephanie L. Wan, Assistant United States Attorney, and the defendant, Colby Fronterhouse ("the defendant"), represented by Erica Mynarich.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the superseding information, charging him with a violation of 18 U.S.C. § 2252, that is, receipt and distribution of child pornography. The defendant also agrees to forfeit to the United

States the property described in the Forfeiture Allegation of the superseding information. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

Beginning on September 2, 2020, and continuing through September 6, 2020, said dates being approximate, in Christian County, in the Western District of Missouri, **COLBY FRONTERHOUSE**, the defendant, knowingly received and distributed any visual depiction that had been mailed and shipped and transported in interstate commerce, and which contains materials which had been so mailed and shipped and transported by any means, including by computer, the production of which involved the use of a minor engaging in sexually explicit conduct and which visual depiction was of such conduct, all in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

On September 11, 2020, Christian County, Missouri, Deputy Devin Wagner contacted John Doe, then 13 years old, and John Doe's father. Deputy Wagner was advised that John Doe had been contacted by an unknown individual, claiming to be a 14 year old female, (the "suspect"), using the phone number (417) 228-0055 and that John Doe had transmitted text messages with this phone number for approximately one week. During the exchange of messages, the suspect convinced John Doe to transmit nude images of himself, in exchange for nude images of herself.

Christian County, Missouri, Sheriff's Office Detective Sarah Spurlock-Patterson downloaded the contents of John Doe's Apple iPhone 8. Detective Spurlock-Patterson used law enforcement resources to learn the suspect phone number (417) 228-0055 was registered to Bandwidth, LLC, but was maintained by Ad Hoc Labs. An investigative subpoena to Ad Hoc Labs[7] revealed that the account associated with the burner phone number (417) 228-0055 was created on November 5, 2019, and "burned/expired" on September 18, 2020. The account listed phone number (417) 827-7535 as the actual phone number behind the burner phone number of (417) 228-0055. Homeland Security Investigations (HSI) Task Force Officer (TFO) Joseph Fletcher did research and determined that to register for a "burner" number with Ad Hoc Labs, a subscriber must provide a legitimate phone number. The defendant was notified of law enforcement's request to Ad Hoc Labs for the subscriber information. On November 23, 2020, law enforcement received

---

[7] Ad Hoc Labs provides a service called the "Burner App". According to their website, "Burner is your "other" number – a smart privacy layer for the smartphone era, giving users the power to take control of their communications and personal data. Enabling users to obtain and manage additional phone numbers for voice, SMS, and MMS communications, Burner is fast, safe and private. Burner lets users get as many numbers as they want, use each as a private line on an iPhone or Android phone, and keep numbers indefinitely or 'burn' numbers they no longer need."

Case 6:21-cr-03024-BP   Document 36   Filed 08/19/21   Page 2 of 18

an email from Dee Wampler in reference to the investigative subpoena to Ad Hoc Labs on behalf of his unnamed client.

A subpoena to AT&T revealed that the phone number (417) 827-7535 was registered to FRONTERHOUSE since November 10, 2007. AT&T provided two addresses for FRONTERHOUSE, one of which was 2573 South Mumford Avenue, Springfield, Missouri 65809. AT&T provided an email address for FRONTERHOUSE of colbyfront@yahoo.com.

On January 6, 2021, TFO Fletcher began reviewing the forensic analysis of John Doe's cell phone and John Doe's associated iCloud account. TFO Fletcher located a series of images of a male in underwear, with what appeared to be an erect penis outline showing through the underwear. TFO Fletcher also located an image titled IMG_0466.JPG depicting a male exposing his penis. These images match the content of the text message thread between the suspect and John Doe. The exposed penis image was last modified on September 5, 2020, fitting the timeline of the text message and the content of the text messages between John Doe and the suspect.

TFO Fletcher reviewed the conversation that took place between John Doe and the phone number (417) 228-0055, which occurred between September 2, 2020, and September 6, 2020. During the conversation between John Doe and the user of (417) 228-0055, John Doe told the suspect he is 13 years old and the suspect identified himself as a 14 year old female. The first text message sent by the suspect to John Doe read, "Hey Ryan, was kind of hoping I'd hear from you over the weekend or this week:). I am so glad our paths crossed on Friday because I DEFINITELY had fun at your place:)…I needed to relieve some stress, and that definitely did the trick! Anyway, would love to hang out again sometime soon if you'd want!…so let me know if you're interested:). Hope to talk to you soon!! –Lacey." After John Doe clarified that he is not "Ryan", the text message conversation continued on for approximately four days with the suspect asking and encouraging John Doe to send the suspect sexually explicit images, having sexually explicit conversations with John Doe, and John Doe sending sexually explicit images to the suspect. At some point, the suspect made specific requests for poses or types of images from John Doe. During the text conversation, the suspect sent John Doe multiple images of a female who appeared to be approximately 14 years old, some of which were in bathing suits or underwear. The suspect appeared to entice John Doe into sending additional images of himself by promising to send John Doe additional images of the female. John Doe stopped responding to texts on September 6, 2020.

Within the conversation, the suspect ultimately identified himself as "Lacey Jones" a student who attends Kickapoo High School. Law enforcement followed up with Springfield Public Schools and determined that there was no student with the name "Lacey Jones" who attended Kickapoo High School.

TFO Fletcher was able to determine that FRONTERHOUSE was residing at the 2573 South Mumford Avenue address, and obtained a federal search warrant signed by Chief Magistrate Judge David P. Rush for this residence on January 21, 2021. The federal search warrant was served on the residence on January 26, 2021.

During the service of the search warrant, TFO Fletcher contacted FRONTERHOUSE at the residence. In FRONTERHOUSE's right front pants pocket was an Apple iPhone XS, bearing serial number G0NXT19YKPFT, which was seized by TFO Fletcher.

On January 27, 2021, HSI TFO Larry Roller, a certified forensic analyst, was able to perform a partial extraction of the iPhone seized from FRONTERHOUSE's person. In the information provided to TFO Roller from the iPhone extraction, the iPhone was utilizing the phone number (417) 827-7535. The email address colbyfront@yahoo.com was found as having been used on the iPhone and was the email address associated with the iCloud account on the iPhone.

Recovered in the partial extraction of the iPhone collected from FRONTERHOUSE were 16 connection logs to the Burner application server, showing this iPhone had connected to the servers owned and managed by Ad Hoc Labs Inc. Burner application. One of these connection logs showed FRONTERHOUSE's iPhone had connected to the Burner application servers on September 4, 2020, which was during the time frame when the text message conversation occurred between John Doe and the Burner application VoIP phone number (417) 228-0055. TFO Roller also determined that FRONTERHOUSE had completely reset his IPhone on September 21, 2020, at 0553 hours. This reset occurred after John Doe stopped communicating with FRONTERHOUSE and three days after (417) 228-0055 was allowed to expire. The defendant also reinstalled Windows on the Dell laptop recovered during the search warrant on November 17, 2021, at 22:09 hours, six days before Dee Wampler sent the email regarding the investigative subpoena to Ad Hoc Labs.

Also located on FRONTERHOUSE's cell phone was an email account with the email address laceylounixa@gmail.com.

The defendant was employed as an Assistant Principal at Nixa Junior High School in Nixa, Missouri, at the time of the text message conversations with John Doe. On January 27, 2021, TFO Fletcher made contact with the administration at Nixa Junior High School who confirmed that FRONTERHOUSE would have access to John Doe's contact information.

TFO Fletcher confirmed that the images sent by John Doe to FRONTERHOUSE had been mailed, shipped, and/or transported through interstate commerce. Also both John Doe's and FRONTERHOUSE's Apple iPhones were manufactured outside of the State of Missouri, and would have had to been mailed, shipped, and/or transported in interstate or foreign commerce to enter the State of Missouri.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory

Page 4 of 18

Case 6:21-cr-03024-BP   Document 36   Filed 08/19/21   Page 4 of 18

sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the superseding information, charging him with receipt and distribution of child pornography, the minimum penalty the Court may impose is not less than 5 years' imprisonment, while the maximum penalty the Court may impose is not more than 20 years' imprisonment, not less than 5 years', or life, supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a.    in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b.    the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c.    in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to life;

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release; however, if Court revokes the supervised release because the defendant committed a criminal offense under chapter 109A, 110 (child pornography offenses), or 117, or section 1201 or 1591 of Title 18 of the United States Code, the law may allow the Court to impose a period of imprisonment of five (5) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot be less than 5 years or life, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

i. The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings;

j. The defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States, either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including but not limited to the following specific property: an Apple iPhone XS, bearing serial number G0NXT19YKPFT. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k. The defendant specifically agrees and authorizes any state or local law enforcement agency having possession of property subject to federal forfeiture to release the property to a federal agency, either prior to or after entry of an order forfeiting the defendant's interest in such property. Further, the defendant agrees to hold harmless any state or local law enforcement agency which releases such property to any federal agency for federal forfeiture proceedings;

l. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing;

m. The defendant states that he is the sole and rightful owner of Apple iPhone XS, bearing serial number G0NXT19YKPFT, and that, to the best of his knowledge, no one else has any ownership or other interest in the property. In the event any federal, state or local law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to the destruction or any other disposition of the property by the federal, state or local agency without further notice or obligation whatsoever owing to the defendant;

n. Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility; and

o. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to receipt and distribution of child pornography or sexual exploitation of children for which it has venue and which arose out of the defendant's conduct described above.

Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss the original indictment, at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to

correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a.    The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b.    The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2G2.2;

c. There is no agreement between the parties regarding the applicable enhancements. The parties agree that the Court will determine the applicable enhancements after receipt of the presentence investigation report prepared by the United States Probation Office and after the parties have had an opportunity to be heard on the applicable enhancements;

d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

g. The United States agrees not to seek a sentence that exceeds 144 months, and the defendant agrees not to seek a sentence that is less than 120 months, regardless of the Guideline range. The agreement by the parties is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond

Case 6:21-cr-03024-BP   Document 36   Filed 08/19/21   Page 10 of 18

a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

    i.    The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a.    oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.    comment on the evidence supporting the charges in the superseding information;

c.  oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

d.  oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

a.  the right to plead not guilty and to persist in a plea of not guilty;

b.  the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c.  the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d.  the right to confront and cross-examine the witnesses who testify against him;

e.  the right to compel or subpoena witnesses to appear on his behalf; and

f.  the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or

ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

  a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

  b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

  a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

  b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

  c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d. Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

h. The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the

defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States

Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **Sex Offender Registration.** The defendant acknowledges that he has been advised, and understands that, by pleading guilty to the instant offense, he will be required under the Sex Offender Registration and Notification Act (SORNA), a federal law, to register as a sex offender and keep the registration current in each of the following jurisdictions: where he resides; where he is employed; and where he is a student. The defendant also acknowledges that he understands that the requirements for registration include providing his name, his residential address, the names and addresses of any places whereshe is, or will be, an employee or student, or any other relevant information. The defendant further acknowledges that he understands that the requirement to keep the registration current includes registering in the jurisdiction in which he resides, is an employee, or is a student, and must be done within 72 hours of any such change in status. The defendant also agrees that he will provide his Probation Officer proof of registration

within 72 hours of release from imprisonment, and abide by all state and federal sex offender registration laws, as well as abiding by all of his Probation Officer's directives.

The defendant acknowledges that he has been advised, and understands, that failure to comply with these obligations could subject him to either state or federal prosecution for failure to register, pursuant to Title 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

22. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Teresa A. Moore
Acting United States Attorney

By *(signature)*

Dated: 8-19-2021

**Stephanie L. Wan**
Assistant United States Attorney
Missouri Bar No. 58918

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the superseding information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 8/19/21

**Colby Fronterhouse**
Defendant

I am defendant Colby Fronterhouse's attorney. I have fully explained to him his rights with respect to the offenses charged in the superseding information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Colby Fronterhouse's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 8/19/21

**Erica Mynarich**
Attorney for Defendant

Page **18** of **18**

Case 6:21-cr-03024-BP   Document 36   Filed 08/19/21   Page 18 of 18